# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| SAEED HAMMAD,<br><br>*Plaintiff*,<br><br>v.<br><br>**CONVERGENT OUTSOURCING, INC.,** *and* **EXPERIAN INFORMATION SOLUTIONS, INC.,**<br><br>*Defendants*. | Case No: 8:23-cv-112<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT AND JURY TRIAL DEMAND

COMES NOW the Plaintiff, **Saeed Hammad** ("**Mr. Hammad**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, **Convergent Outsourcing, Inc.** ("**Convergent**"), and **Experian Information Solutions, Inc.** ("**Experian**") (jointly, the "**Defendants**"), stating as follows:

## PRELIMINARY STATEMENT

1. This is an action brought by Mr. Hammad against both Defendants for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* ("**FCRA**"), and against Convergent only for violations of the *Fair Debt Collection Practices Act*, 15 U.S.C. § 1692, *et seq.* ("**FDCPA**").

## JURISDICTION AND VENUE

2. Subject matter jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, the FDCPA, 15 U.S.C. § 1692k(d), and 28 U.S.C. § 1331.

Page **1** of **18**

3. The Defendants are subject to the provisions of the FCRA and/or the FDCPA, and are subject to the jurisdiction of this Court pursuant to Fed. R. Civ. P. 4(k)(1)(A) and Section 48.193, Florida Statutes.

4. Venue is proper in the Middle District of Florida, pursuant to 28 U.S.C. §1391(b)(2), because the events giving rise to this cause of action occurred within this District.

## PARTIES

5. **Mr. Hammad** is a natural person residing in the City of Lakeland, Polk County, Florida, and a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c), and the FDCPA, 15 U.S.C. § 1692a(3).

6. **Experian** is an Ohio corporation with a primary business address of **475 Anton Blvd., Costa Mesa, CA 92626.**

7. Experian is registered to conduct business in the State of Florida, where its registered agent is CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.

8. Experian is a *Consumer Credit Reporting Agency* ("**CRA**") within the meaning of 15 U.S.C. § 1681a(f), in that, for monetary fees, it regularly engages in the practice of assembling or evaluating consumer credit information on consumers for the purpose of furnishing consumer reports to third parties, while using means of interstate commerce, specifically the U.S. mail and internet, for the purpose of preparing or furnishing consumer reports.

9. **Convergent** is a Washington corporation with a primary business address of 800 SW 39th street, Suite 100, Renton, Washington 95805.

10. Convergent's Florida Registered Agent is CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.

11. Convergent is a *Debt Collector* within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), in that it uses an instrumentality of interstate commerce, including postal mail and the internet, for its business, the principal purpose of which is the collection of debts, and/or it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

12. Convergent is licensed as a *Consumer Collection Agency* ("CCA") by the Florida Office of Financial Regulation, holding license number CCA0900904.

13. As a licensed CCA, Convergent knows, or should know, the requirements of the FDCPA.

## FACTUAL ALLEGATIONS

### The Alleged Debt

14. In or around May 2021 Convergent started reporting to Experian that Mr. Hammad allegedly owed $4,775 (the "**Debt**" or "**Alleged Debt**") to Sprint Corporation ("**Sprint**"), a cell phone service provider and retailer, concerning a defaulted account from January 2019.[1] **SEE PLAINTIFF'S EXHIBIT A.**

---

[1] Sprint Corporation merged with T-Mobile US on April 1, 2020 and is no longer an independent company.

15. The Alleged Debt arose from services which were primarily for family, personal, or household purposes, specifically cellular phone services, and therefore meets the definition of *Debt* under the FDCPA, 15 U.S.C. § 1692a(5).

16. Reporting a debt to a CRA is an attempt to collect the debt alleged therein. *See, e.g., Edeh v. Midland Credit Management, Inc.*, 748 F. Supp. 2d 1030 (D. Minn. 2010) ("The Court has learned, through its work on countless FDCPA cases, that threatening to report and reporting debts to CRAs is one of the most commonly-used arrows in the debt collector's quiver.")

17. Mr. Hammad disputes owing this Alleged Debt, as he did not have service with Sprint, and did not authorize anyone to obtain an account in his name.

18. Mr. Hammad filed a police report with the Lake County Sheriff's Office about the fraudulent use of his identity ("**Police Report**") to obtain services from Sprint in October 2022. **SEE PLAINTIFF'S EXHIBIT B.**

## Mr. Hammad's Disputes of the Alleged Debt

19. On or around November 7, 2022, Mr. Hammad requested and obtained a copy of his consumer credit disclosure from Experian.

20. On that same day, Mr. Hammad disputed the Convergent tradeline to Experian, indicating that the reported account was the result of identity theft.

21. Mr. Hammad included his police report with his dispute and provided the police report number given to him by the Lake County Sheriff's Office.

22. Experian, upon receipt of Mr. Hammad's dispute, sent Convergent an *Automated Consumer Dispute Verification* Request ("**ACDV**") form through an online platform known as e-OSCAR, asking Convergent to make a reasonable investigation into the dispute.

23. Convergent responded to the ACDV, indicating that its tradeline was accurate and continued reporting the Alleged Debt to Experian.

24. Convergent is a large debt collector and receives many disputes concerning cell phone debts which it reports to CRAs, including a good number which are the result of identity theft.

25. Despite this, upon information and belief, Convergent simply rubber-stamped the ACDV as "accurate" after making a quick verification of the data in Experian's files against the data in its own internal systems.

26. Convergent thus failed to conduct a reasonable investigation into Mr. Hammad's dispute, as any reasonable investigation would have determined that the account did not belong to Mr. Hammad and was the product of identity theft.

27. Mr. Hammad also mailed a dispute letter and a copy of the police report to Convergent directly in December 2022.

28. To date, Convergent has taken no further action and is still actively reporting its collection tradeline concerning Sprint to Experian.

29. Experian also failed to make a reasonable investigation into Mr. Hammad's dispute.

30. Upon receipt of the ACDV response, Experian, on information and belief, utilized an automated system which made rudimentary checks of tradeline data between what Convergent had reported and the data contained in Experian's own file on Mr. Hammad, *e.g.*, his name, address, date of birth, and Social Security number.

31. Such a policy is practically a recipe for an unreasonable investigation of identity theft, as it is almost axiomatic that using a date of birth and Social Security number to confirm the identity of an accountholder whose identity has been stolen will result in a false positive.

32. For at least the last 35 years, courts in this district have recognized that a CRA cannot rely upon its data furnisher exclusively, when the consumer disputes the accuracy of the furnisher's version of events and provides evidence to the contrary. The CRA must make some independent investigation of its own. "Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [data furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg*, 608 F. Supp. 972 (M.D.Fla.1985).

33. If the CRA knows or should know that the furnisher is unreliable, then a "reasonable reinvestigation" may require verifying the accuracy of the furnisher's information directly. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

34. Experian had many reasons to know Convergent was not reliable, including the fact Experian has been a co-defendant in dozens of lawsuits filed against

Convergent in federal court alleging violation of the FCRA and improper investigations.

35. Experian's knowing and repeated conduct warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols., Inc.,* Case No.: 2:15-cv-00952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages against Experian for its repeated, willful violations of the FCRA).

36. Had Experian made any meaningful investigation of its own, it would have quickly determined the Convergent tradeline could not be verified as accurate and removed it from Mr. Hammad's file.

37. Experian is the only one of the "Big 3" nationwide CRAs that is reporting the Convergent tradeline.

38. Mr. Hammad's FICO® credit scores are sufficient to obtain a home loan through a government-guaranteed program like the one offered by the Federal Housing Administration, but he is unable to currently because of disputed collection balance of nearly $5,000 appearing on his Experian – and only his Experian – credit report.

39. Indeed, on or about September 14, 2022, Mr. Hammad applied for a home loan with The Mortgage Firm.

40. The Mortgage Firm, in furtherance of its review of Mr. Hammad's application, requested a consumer report from Certified Credit Reporting of Florida.

41. Certified Credit Reporting of Florida, in turn, requested a consumer report regarding Mr. Hammad from Experian.

42. Experian's report regarding Mr. Hammad included Convergent's tradeline regarding the Alleged Debt.

43. As a result, Mr. Hammad was unable to proceed with his application with the Mortgage Firm.

44. Mr. Hammad has hired this law firm to represent him in this matter and has assigned the firm his right to fees and costs.

## COUNT I
## VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b) – *Experian*

45. Mr. Hammad adopts and incorporates paragraphs 1 – 44 as if fully stated herein.

46. Experian violated **15 U.S.C. § 1681e(b)** by failing to establish, follow, or maintain reasonable procedures to assure the maximum possible accuracy of the information in its credit reports concerning Mr. Hammad, as it included the Alleged Debt, furnished to it by Convergent, despite being provided with evidence suggesting that the Convergent's data was unreliable.

47. As a result of this conduct by Experian, Mr. Hammad has suffered loss of credit, an inability to build equity in a new home purchase, a loss of time, financial loss, higher interest rates, and emotional distress.

48. Experian's conduct was willful and intentional, and as such, Experian is liable to Mr. Hammad, pursuant to 15 U.S.C. § 1681n, for the greater of Mr. Hammad's actual damages or statutory damages of up to $1,000 per violation, as well as for punitive damages, attorneys' fees, and costs.

49. Alternatively, Experian's conduct was negligent, and Experian is thus liable, pursuant to 15 U.S.C. § 1681o, for Mr. Hammad's actual damages, attorneys' fees, and costs.

**WHEREFORE,** Mr. Hammad respectfully requests that this Honorable Court enter judgment against Experian for:

a. The greater of statutory damages of $1,000 per incident or Mr. Hammad's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A), or in the alternative, Mr. Hammad's actual damages, pursuant to 15 U.S.C. § 1681o(a)(1);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and/or 15 U.S.C. § 1681o(a)(2); and,

d. Such other relief that the Court deems just and proper.

## COUNT II
## VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681i(a)(1)(A) – *Experian*

50. Mr. Hammad adopts and incorporates paragraphs 1 – 44 as if fully stated herein.

51. Experian violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable investigation regarding the Convergent tradeline disputed by Mr. Hammad, on at least two separate occasions.

52. On information and belief, Experian blindly accepted information received from an automated ACDV response as accurate and made no further

investigation on its own, despite knowing Convergent's reported data was unreliable.

53. As a result of this conduct by Experian, Mr. Hammad has suffered loss of credit, an inability to build equity in a new home purchase, a loss of time, financial loss, higher interest rates, and emotional distress.

54. Experian's conduct was willful and intentional, and as such, Experian is liable to Mr. Hammad, pursuant to 15 U.S.C. § 1681n, for the greater of Mr. Hammad's actual damages or statutory damages of up to $1,000 per violation, as well as for punitive damages, attorneys' fees, and costs.

55. Alternatively, Experian's conduct was negligent, and Experian is thus liable, pursuant to 15 U.S.C. § 1681o, for Mr. Hammad's actual damages, attorneys' fees, and costs.

**WHEREFORE,** Mr. Hammad respectfully requests that this Honorable Court enter judgment against Experian for:

    a. The greater of statutory damages of $1,000 per incident or Mr. Hammad's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A), or in the alternative, Mr. Hammad's actual damages, pursuant to 15 U.S.C. § 1681o(a)(1);

    b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

    c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and/or 15 U.S.C. § 1681o(a)(2); and,

    d. Such other relief that the Court deems just and proper.

## COUNT III
## VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681s-2(b) – *Convergent*

56. Mr. Hammad adopts and incorporates paragraphs 1 – 44 as if fully stated herein.

57. Convergent violated **15 U.S.C. § 1681s-2(b)** when it failed to conduct a reasonable investigation after receiving notice of a dispute from Experian, regarding the Convergent tradeline, on at least two separate occasions.

58. Had Convergent conducted a reasonable investigation, it would have concluded that its tradeline was the result of identity theft and deleted it.

59. As a result of Convergent's conduct, Mr. Hammad has suffered loss of credit, an inability to build equity in a new home purchase, a loss of time, financial loss, higher interest rates, and emotional distress.

60. Convergent's conduct was willful and intentional, and as such, Convergent is liable to Mr. Hammad, pursuant to 15 U.S.C. § 1681n, for the greater of Mr. Hammad's actual damages or statutory damages of up to $1,000 per violation, as well as for punitive damages, attorneys' fees, and costs.

61. Alternatively, Convergent's conduct was negligent, and Convergent is thus liable, pursuant to 15 U.S.C. § 1681o, for Mr. Hammad's actual damages, attorneys' fees, and costs.

**WHEREFORE,** Mr. Hammad respectfully requests that this Honorable Court enter judgment against Convergent for:

    a.    The greater of statutory damages of $1,000 per incident or Mr. Hammad's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A), or in the alternative, Mr. Hammad's actual damages, pursuant to 15 U.S.C. § 1681o(a)(1);

    b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

    c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and/or 15 U.S.C. § 1681o(a)(2); and,

    d.    Such other relief that the Court deems just and proper.

## COUNT IV
## VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692e - *Convergent*

62.    Mr. Hammad adopts and incorporates paragraphs 1 – 44 as if fully stated herein.

63.    Convergent violated **15 U.S.C. § 1692e** when Convergent made false and / or misleading representations in an attempt to collect the Debt, when it reported the Debt to Experian, claiming it was Mr. Hammad's legitimately-incurred, defaulted debt, despite receiving multiple notices and evidence from Mr. Hammad that it was not legitimately his.

64.    As a result of Convergent's conduct, Mr. Hammad has suffered loss of credit, an inability to build equity in a new home purchase, a loss of time, financial loss, higher interest rates, and emotional distress.

WHEREFORE, Mr. Hammad respectfully requests this Honorable Court enter judgment against Convergent as follows:

 a. Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

 b. Actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

 c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

 d. Such other relief that this Court deems just and proper.

## COUNT V
## VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692f(1) - *Convergent*

65. Mr. Hammad adopts and incorporates paragraphs 1 – 44 as if fully stated herein.

66. Convergent violated **15 U.S.C. § 1692f(1)** when Convergent attempted to collect an amount owed – the Debt – with no basis in contract or law, as the Debt was the product of identity theft and not legitimately owed by Mr. Hammad.

67. As a result of Convergent's conduct, Mr. Hammad has suffered loss of credit, an inability to build equity in a new home purchase, a loss of time, financial loss, higher interest rates, and emotional distress.

WHEREFORE, Mr. Hammad respectfully requests this Honorable Court enter judgment against Convergent as follows:

 a. Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

 b. Actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

    c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

    d.    Such other relief that this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted on **January 17, 2023,** by:

**SERAPH LEGAL, P.A.**

*/s/ Bryan J. Geiger*
Bryan J. Geiger, Esq.
Florida Bar No.: 119168
BGeiger@SeraphLegal.com
1614 North 19th Street
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
*Counsel for Plaintiff*

**ATTACHED EXHIBIT LIST**
A	Plaintiff's Experian Consumer Disclosure, January 5, 2023, Excerpt
B	Plaintiff's Police Report